**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

E.S., by and through her parents KEVIN AND PAMELA STEINMETZ,

And

R.G., by and through her parents AMANDA AND BLAKE GRAY,

And

V.D., by and through his parents KATELIN CHRISTIANER-DONKERS AND CLINTON DONKERS,

Plaintiffs,

v.

MANHATTAN-ODGEN UNIFIED SCHOOL DISTRICT 383,

Defendant.

Case No. 26-4032-AJP-ADM

**FIRST AMENDED COMPLAINT**

Plaintiff E.S., by and through her parents, guardians, and next friends, Kevin and Pamela Steinmetz, Plaintiff R.G., by and through her parents, guardians, and next friends, Amanda and Blake Gray, and Plaintiff V.D., by and through his parents, guardians, and next friends, Katelin Christianer-Donkers and Clinton Donkers (collectively, "Plaintiffs"), bring this First Amended Complaint against Manhattan-Odgen Unified Schools ("the District") for failure to accommodate E.S.'s, R.G.'s, and V.D.'s disabilities in violation of the Americans with Disabilities Act and the Rehabilitation Act.[1]

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a)(3) and the District of Kansas's Administrative Procedures, Plaintiffs refer to the minors by their initials. *See* Fed. R. Civ. P. 5.2(a)(3).

**JURISDICTION AND VENUE**

1. Subject matter jurisdiction is conferred on this Court pursuant to 28 USC § 1331, as this action arises under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. ("the ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. ("the Rehabilitation Act").

2. The District is subject to personal jurisdiction in this Court because it is a public school district organized and existing under the laws of the State of Kansas, and all events described in this Complaint occurred in the State of Kansas.

3. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because all parties reside in Kansas, and all events described in this Complaint occurred in the State of Kansas, within the boundaries of the District of Kansas.

**THE PARTIES**

4. E.S., R.G., and V.D. are minors who are domiciled in the State of Kansas. At the time of each violation herein, E.S., R.G., and V.D. were qualified individuals with a disability within the meaning of the ADA and the Rehabilitation Act.

5. Kevin and Pamela Steinmetz are the parents of E.S. They are domiciled in the State of Kansas.

6. Amanda and Blake Gray are the parents of R.G. They are domiciled in the State of Kansas.

7. Katelin Christianer-Donkers and Clinton Donkers are the parents of V.D. They are domiciled in the State of Kansas.

8. The District is primarily located within Riley County, Kansas and is a public school district organized and existing under the laws of the State of Kansas. At all times relevant herein, the District was the educational agency responsible for providing E.S., R.G., and V.D.

with full and equal access to the public education programs and activities it offers in compliance with the requirements of federal law. The District receives federal funding.

## INTRODUCTION

9. This case concerns the District's decision to prohibit the provision of mental and behavioral healthcare at school to treat their medically diagnosed autism spectrum disorder. Plaintiffs E.S.'s, R.G.'s, and V.D.'s therapists, pediatricians, and parents all agree that E.S., R.G., and V.D.'s autism could and should be addressed through the provision of Applied Behavior Analysis ("ABA") therapy at school.

10. This therapy would be provided by E.S.'s, R.G.'s, and V.D.'s private therapists at no cost to the District. It would not disrupt the education of E.S., R.G., and V.D., nor any of their classmates. The District nevertheless prohibits it.

11. The District's decision to prohibit the provision of medically necessary mental and behavioral healthcare has risked E.S.'s, R.G.'s, and V.D.'s health, safety, and wellbeing. It has prevented E.S., R.G., and V.D. from accessing educational services; it has injured E.S., R.G., and V.D., and their parents, and if it continues, it will cause E.S., R.G., and V.D. permanent harm.

12. Because the District has prohibited the provision of mental and behavioral healthcare by Plaintiffs' private therapists, E.S. and R.G. had been forced to leave public school and seek education elsewhere, either in parochial school or via home schooling, where ABA therapy is currently allowed, but at significant cost and detriment in being excluded from equal access to public school. V.D., who remains enrolled in the District, has been limited to attending Kindergarten for only half days because the District will not permit him to attend the full school day with his ABA therapist.

## FACTUAL BACKGROUND

13. E.S., R.G., and V.D. have been diagnosed with autism spectrum disorder ("autism"). E.S., R.G., and V.D. are bright, friendly, loving children who love people.

14. As a result of their autism, E.S., R.G., and V.D. experience a host of challenges. They process sensory input differently. They have experienced developmental delays, and they have difficulty expressing themselves verbally, understanding spoken language, regulating their emotions, interacting with their peers, and focusing on tasks. They have certain potentially detrimental behaviors, such as elopement, a tendency to stray, or phobias.

15. E.S., R.G., and V.D. have been prescribed Applied Behavior Analysis ("ABA") therapy as a medically necessary treatment for their autism.

16. ABA therapy is the gold standard for autism treatment. It has been studied for decades and has been associated with gains in language and communication, improved attention, focus, and social skills, and decreases in the incidence and severity of maladaptive behaviors. E.S.'s, R.G.'s, and V.D.'s therapies are administered pursuant to a treatment plan designed and implemented by a Board Certified Behavior Analyst ("BCBA") or Autism Specialist, who reports to a BCBA. The treatment plan does not merely describe strategies to manage E.S.'s, R.G.'s, and V.D.'s maladaptive behaviors, it establishes as goals well-defined and measurable growth in E.S.'s, R.G.'s, and V.D.'s development and abilities, such as their capacity to cope with stress and anxiety and manage their emotions, and their ability to process language, communicate with others, interact with peers, and focus on tasks. The treatment plan is implemented by therapists who have received specialized training in ABA therapy and who work one-on-one with E.S., R.G., and V.D. under the supervision of the BCBA or Autism Specialist. ABA therapists use specialized data collection methods to track progress toward developmental and behavioral goals which are defined in a treatment plan.

17. It is medically necessary for E.S., R.G., and V.D. to receive ABA therapy in multiple settings, including at home, at school, and in the community, so that ABA therapy can be used to address their developmental and behavioral deficits across multiple settings. It is medically necessary for E.S., R.G., and V.D. to receive ABA therapy in multiple settings so that the gains they make through therapy can be generalized, and to ensure that these gains are permanent.

18. ABA therapy has been very helpful for E.S., R.G., and V.D. The District allowed ABA therapy in school for E.S. and R.G. prior to telling their parents that ABA would no longer be allowed. Through ABA therapy, E.S., R.G., and V.D. have realized significant developmental gains, including improvements in their ability to communicate, focus, and engage with other people, including their peers, with a resulting marked improvement in their social skills.

19. E.S. is a happy, easy-going, and sweet child. She loves observing people and the environment around her. She likes being around her teachers and peers, but she does not necessarily want to interact with them. On the other hand, she is prone to giving spontaneous hugs, which are sometime surprising or uncomfortable to others.

20. E.S. began receiving ABA therapy during the summer of 2024, receiving 37.5 hours of ABA therapy a week, in anticipation of going to Kindergarten.

21. During the 2024/2025 school year, E.S. attended Kindergarten at Theodore Roosevelt Elementary School in the District. During the entire school year, E.S. received ABA therapy within school, during normal classes and also during special education sessions such as occupational therapy, physical therapy, speech therapy and other times when she needed special attention. ABA therapy did not interfere with any of these learning activities, and, instead, the

teachers and therapists found it helpful for E.S. and those around her to have the ABA therapist present to assist.

22. However, during the summer of 2025, the District enacted a policy prohibiting ABA therapy after a year of allowing it for E.S. in Kindergarten.

23. Further, upon information and belief, some schools within the District had allowed ABA therapy for upwards of fifteen years before the District reversed course and prohibited ABA therapy.

24. Due to this decision by the District, E.S. was denied the benefit of attending public school due to her disability and forced to go to a parochial school outside the District where she continues to get ABA therapy in the First Grade. However, this has come at significant cost to her parents, which they would not otherwise be required to incur, and the special education services provided to E.S., even with the continued ABA therapy, are not at the same level as available in public school.

25. Additionally, during the time E.S. has attended parochial school, the District initially in the fall of 2025 provided her with some special education services, and allowed the ABA therapist to be present, but then, without explanation other than the existence of the "new policy," thereafter prohibited the ABA therapist from attending these special education services, effectively terminating them for E.S. during the special education sessions.

26. R.G. is a joyful child who loves people, loves animals, likes to color, read books, and really enjoys and benefits from being with other children.

27. In the 2024/2025 school year, R.G. attended Oliver Brown Elementary School in the District in 5th Grade. During the entire school year, she received ABA therapy in school and

after school for 37.5 hours a week. Her teacher and Principal were very supportive of R.G. receiving ABA therapy in school.

28. Prior to receiving ABA therapy, R.G. would run off, had certain phobias, and had difficulty focusing on school tasks. With ABA therapy, R.G. improved in her ability to focus on learning, gained more skills, gained more independence, and developed peer and friend relationships.

29. In or about March 2025, when touring and transitioning to Susan B. Anthony Middle School, R.G.'s parents were told that ABA therapy might not be allowed for R.G. in middle school for district level programs, even though ABA therapy had previously been allowed for other children in middle school during the prior school year. R.G.'s parents were later told that ABA therapy would not be allowed in middle school for district level programs.

30. Consequently, due to the District's refusal to allow ABA therapy in middle school, R.G. has been denied the benefit of attending public school due to her disability and forced to be home schooled, where she continues to receive ABA therapy 37.5 hours a week. Although R.G. receives ABA therapy in home schooling, she is deprived of the opportunity to obtain special education sessions in public school, deprived of the benefits of being in public school with other children, deprived of special education services, and deprived of relationships and friendships with her peers, which causes her to now be isolated.

31. V.D. is a five year old child who currently goes to kindergarten at Amanda Arnold Elementary School. V.D. is a sweet child who loves reading, listening to music, and is sensory seeking. He is kind, intelligent, loves to cuddle, and has a vivid imagination. He creates strong relationships with the adults around him but struggles with peer interaction. He uses

scripting and songs to communicate his needs, while still developing his functional communication skills.

32. V.D. has been diagnosed with autism spectrum disorder. V.D. has been prescribed ABA therapy as a medically necessary treatment for his autism, and he currently receives approximately 14 – 17.5 hours per week of ABA therapy (even though prescribed 38 hours) under a treatment plan designed by a BCBA. The District's prohibition of ABA therapy in school discriminatorily restricts V.D.'s ability to receive the fully prescribed amount of ABA therapy.

33. For the 2026/2027 school year V.D. currently attends Kindergarten for only half days.

34. On or about June 24, 2026, V.D.'s parents requested that the District permit V.D. to attend full school days accompanied by his ABA therapist, as a reasonable accommodation of his disability.

35. On or about June 30, 2026, the District denied this request pursuant to the same policy prohibiting ABA therapy in school that it applied to E.S. and R.G., saying only that no Memorandum of Understanding was in place for V.D. and due to "ongoing litigation."

36. As a result of the District's refusal to allow ABA therapy at school, V.D. has been denied the benefit of attending a full day of public school on the basis of his disability. Unlike his non-disabled peers, V.D. is excluded from the full Kindergarten day, including the instruction, activities, special education services, and peer interaction offered during the portion of the school day he does not attend.

37. V.D.'s ABA therapist is ready and willing to accompany V.D. during the full school day and to provide ABA therapy at school at no cost to the District, in a manner intended to avoid or minimize disruption to the classroom.

38. E.S., R.G., and V.D. need to receive ABA therapy at school as a medical treatment for their autism. Without ABA therapy at school, E.S.'s, R.G.'s, and V.D.'s autism symptoms will likely continue to worsen and lead to more permanent impairment. They cannot receive medically necessary treatment for their autism as prescribed by their doctors without receiving ABA therapy at school.

39. Plaintiffs have informed the District that E.S., R.G., and V.D. need to receive ABA therapy at school. E.S., R.G., and V.D.'s ABA therapists have observed E.S., R.G., and V.D. at school and recommended that they receive ABA therapy at school. E.S., R.G., and V.D.'s classroom staff, including teachers and teaching assistants, believed that E.S., R.G., and V.D. needed to receive therapy at school and were ready and willing to accommodate this therapy. They determined that the provision of this therapy will not be disruptive to the classroom or learning objectives of other children and will not fundamentally alter the school setting.

40. The District has refused to permit the provision of ABA therapy to E.S., R.G., and V.D. at school without just cause or excuse and merely offered a series of changing, pretextual reasons, despite the fact that ABA therapy had been previously allowed in the District without material incident.

41. E.S., R.G., and V.D.'s therapists are ready and willing to provide ABA therapy at school in the District in a manner intended to avoid or minimize disruption to the classroom and avoid any other burden or inconvenience to the District. Based on the prior history of allowing

ABA therapy, the District knows that the provision of ABA therapy to E.S., R.G., and V.D. at school will not cause undue disruption in the classroom, and will not fundamentally alter the school setting.

42. The District is aware that the ABA therapy requested by Plaintiffs in school will come at no cost to the District.

43. E.S., R.G., and V.D. require ABA therapy to address their mental, behavioral, and developmental needs and to achieve full and equal access to the public education programs and activities that the District offers. E.S., R.G., and V.D. do not require ABA therapy to address their educational needs as their teachers would provide instructional services to E.S., R.G., and V.D.

**COUNT I**
**(Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.)**

44. E.S., R.G., and V.D. incorporate each and every allegation above as if fully set forth herein.

45. E.S., R.G., and V.D. are qualified individuals with a disability under the ADA because their autism is a physical or mental impairment that substantially limits one or more major life activities.

46. The District receives federal funding.

47. E.S., R.G., and V.D. require ABA therapy at school as a medical treatment for their autism in order to ameliorate the symptoms of their autism and avoid harm to their mental health and development. Because the District has denied E.S., R.G., and V.D. from receiving ABA therapy at school, their untreated autism prevents them from enjoying meaningful access to the benefits of a public education, and the deprivation of medically necessary services causes them real and lasting physical and mental harm. The District has refused to permit E.S., R.G.,

and V.D. to receive ABA therapy at school even though this modification is necessary to avoid discrimination against E.S., R.G., and V.D. on the basis of their autism, and even though modification of this policy would not fundamentally alter any District program or service system.

48. The District has violated the ADA by failing and refusing to make reasonable accommodations necessary for E.S., R.G., and V.D. to access the District's programs and services.

49. The District has violated the ADA by excluding and/or not affording them equal opportunity to participate in or benefit from its programs and services in equal measure to the participation in or benefit afforded to others.

50. The District has violated the ADA by declining to afford Plaintiffs equal opportunity to participate, due to their disability, in the District's benefits and services that are afforded to others.

51. The District was on notice and was fully aware of E.S., R.G., and V.D.'s need for ABA services at school but refused to permit the provision of those services.

52. E.S.'s, R.G.'s, and V.D.'s ABA therapists were available at all relevant times to provide therapy at school as a reasonable accommodation of E.S., R.G., and V.D.'s autism. The District knew that ABA treatment for E.S., R.G., and V.D. at school could be provided at no cost to the District and would not be disruptive or fundamentally alter the school setting.

53. As a result of the District's refusal to accommodate E.S., R.G., and V.D.'s need for ABA therapy at school, E.S., R.G., and V.D. have been harmed and continue to be harmed on the basis of their disability.

54. The District has intentionally discriminated against E.S., R.G., and V.D. on the basis of their disability by acting with deliberate indifference to E.S., R.G., and V.D.'s need for ABA therapy at school.

55. At all relevant times, the District knew that denying E.S., R.G., and V.D. this reasonable accommodation meant that by reason of their autism they are denied the benefit of programs and services offered to others.

56. E.S.'s, R.G.'s, and V.D.'s parents repeatedly requested that E.S., R.G., and V.D. be permitted to receive ABA therapy at school, and District personnel have been fully aware of each of E.S., R.G., and V.D.'s need for accommodation and the mental, psychological, emotional, and developmental damage that has resulted from their refusal to provide this accommodation, as well as financial costs and damages incurred which would otherwise not be incurred were Plaintiffs afforded the reasonable accommodation of ABA therapy provided in public school.

57. The District has been deliberately indifferent to E.S., R.G., and V.D.'s unmet needs and to the harm their refusal to accommodate their needs has caused.

58. E.S., R.G., and V.D. suffer ongoing and irreparable harm as a result of the District's continued discrimination and violations of the ADA and this harm will continue until the District's conduct is declared unlawful and enjoined by this Court. There is no adequate remedy at law.

**COUNT II**
**(Violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq.)**

59. E.S., R.G., and V.D. incorporate each and every allegation above as if fully set forth herein.

60. E.S., R.G., and V.D. are qualified individuals with a disability under Section 504 of the Rehabilitation Act in that their autism is a physical or mental impairment that substantially limits one or more major life activities.

61. The District receives federal funding.

62. The District has violated the Rehabilitation Act by failing and refusing to make reasonable accommodations for E.S., R.G., and V.D. to access the District's programs and services, by utilizing criteria and methods of administration that subject E.S., R.G., and V.D. to discrimination on the basis of their disability, by not affording E.S., R.G., and V.D. an equal opportunity to participate in the District's benefits and services as those afforded others, by not making reasonable accommodations, and denying meaningful access to a public benefit.

63. The District has been and continues to be deliberately indifferent to E.S., R.G., and V.D.'s need for ABA therapy at school. Denying them this accommodation means that E.S., R.G., and V.D. have been denied the benefit of programs and services offered to others by reason of their autism. This denial of access to critical programs and services has resulted in mental, psychological, emotional, and developmental damage to each of E.S., R.G., and V.D., as well as financial costs and damages incurred which would otherwise not be incurred were ABA therapy provided in public school.

64. Consequently, E.S., R.G., and V.D. are suffering ongoing and irreparable harm by the District's violations of the Rehabilitation Act, and the harm will continue unless and until the District's conduct is declared unlawful and is enjoined by this Court. There is no adequate remedy at law.

**COUNT III**
**(Preliminary and Permanent Injunctive Relief)**

65. E.S., R.G., and V.D. incorporate each and every allegation above as if fully set forth herein.

66. An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe, that by refusing to accommodate E.S., R.G., and V.D.'s request that their ABA trained therapist be permitted to administer medically necessary treatment during school, the District fails to comply with Title II of the ADA and Section 504 of the Rehabilitation Act.

67. The District has, and continues, to discriminate against E.S., R.G., and V.D. by denying E.S., R.G., and V.D. access to the full and equal opportunity to participate in the District's benefits and services as those afforded others in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. E.S., R.G., and V.D. are actively experiencing harm by being denied the benefit of public education on the basis of their disability.

68. Pursuant to 42 U.S.C. § 12188, this Court is provided with the authority to grant injunctive relief, including an Order requiring the District to permit E.S., R.G., and V.D.'s ABA trained therapists to administer medically necessary treatment during school throughout the pendency of this litigation to protect the rights of E.S., R.G., and V.D. and to prevent additional irreparable harm to E.S., R.G., and V.D.

69. E.S., R.G., and V.D. are likely to prevail on the merits of their claims because the District's refusal to allow their ABA trained therapists to administer medically necessary treatment during school amounts to clear violations of Title II of the ADA and Section 504 of the Rehabilitation Act. The District failed to engage in an interactive process with E.S., R.G., and

V.D. in response to their requests for reasonable accommodations, and instead simply denied their requests.

70. E.S., R.G., and V.D. have suffered and will continue to suffer irreparable mental, physical, emotional, psychological, and developmental injuries if the School District is not ordered to provide them with meaningful access to the school by allowing their ABA trained therapists to administer medically necessary treatment during the school day.

71. The balance of equities tip in favor of granting injunctive relief because E.S.'s, R.G.'s, and V.D.'s physicians have prescribed ABA Therapy as a medical necessity, their ABA trained therapists are available to administer their medically necessary treatment during school at no cost to the district, and without this injunction, E.S., R.G., and V.D. will continue to suffer irreparable mental, physical, emotional, psychological, and developmental injuries.

72. Granting this injunction will cause little, if any, harm to the School District because this treatment is funded by E.S.'s, R.G.'s, and V.D.'s private insurance, and it will not fundamentally alter or disrupt the school setting. It would merely put E.S. and R.G. back in the position that they were in during the 2024/2025 academic year when the District allowed ABA therapy for them in the classroom and in special education sessions, and it would permit V.D. to attend full school days with his ABA therapist.

73. Time is of the essence as E.S., R.G., and V.D. are in critical years of their lives and educational journeys, and any delay in getting E.S. and R.G. back into public school, and V.D. into a full school day, with their medically prescribed ABA therapy will cause irreparable harm.

74. Granting this injunction is in the public interest to prohibit violations of the law and to fulfill the important goals of the ADA and the Rehabilitation Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor against the District, granting the following relief:

A. A preliminary and permanent injunction requiring the District to permit E.S., R.G., and V.D. to receive ABA therapy at school, including permitting V.D. to attend full school days accompanied by his ABA therapist in the classroom and, as necessary, in pull-out sessions;

B. Apply the existing preliminary injunction to all plaintiffs;

C. An award of damages to be proven at trial;

D. An award of reasonable attorneys' fees, costs, and expenses under any applicable law;

E. An award of pre-judgment and post-judgment interest at the highest lawful rates; and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues triable by jury raised herein.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs hereby request that the trial of this case take place in Topeka, Kansas.

Dated this 12th day of November 2026.

Respectfully submitted,

**STINSON LLP**

By: *s/ Thomas H. Davis*
Thomas H. Davis, KS #23635
Sarah C. Schmitz, KS #30127
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
(816) 842-8600
(816) 691-3495 (fax)
thomas.davis@stinson.com
sarah.schmitz@stinson.com

and

Dylan J. Lee
140 Broadway, Suite 2330
New York, NY 10005
(646) 883-7480
(646) 833-7682 (fax)
dylan.lee@stinson.com
*Pro Hac Vice*

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/*s/ Thomas H. Davis*
Attorney for Plaintiffs